IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

MARION STURGIS DONALDSON,    )
                             )
            Petitioner,      )
                             )
      v.                     )        CV 115-078
                             )        (Formerly CR 111-361)
UNITED STATES OF AMERICA,    )
                             )
            Respondent.      )
_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Correctional Institution in Manchester, Kentucky,

filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his

sentence. The Court **REPORTS** and **RECOMMENDS** Petitioner's motion to amend be

**DENIED** (doc. nos. 22-1, 22-2), the § 2255 motion be **DENIED** without an evidentiary

hearing, this civil action be **CLOSED**, and final judgment be **ENTERED** in favor of

Respondent.

## I. BACKGROUND

A bench trial resulted in Petitioner's conviction for conspiracy to distribute and

possession with intent to distribute controlled substances, and using a communication facility

to facilitate commission of a crime. United States v. Donaldson, CR 111-361, doc. no. 207

(S.D. Ga. Nov. 2, 2011) ("CR 111-361"). Petitioner claims in the present petition trial

counsel ineffectively failed to argue various aspects of the investigation and arrest violated his

constitutional rights.

### A. Investigation

In March 2011, Richmond County narcotics officers commenced an investigation of Dorsett Mandrell Williams. United States v. Donaldson, 558 F. App'x 962, 963 (11th Cir. 2014), cert. denied, 135 S. Ct. 1451, 191 L. Ed. 2d 403 (2015). A confidential informant alleged Mr. Williams was selling large amounts of cocaine from two houses on Camille Street in Augusta, Georgia. Id. Confirming the tip through surveillance and controlled purchases of cocaine, officers obtained court authorization on May 24, 2011 to intercept calls on Mr. Williams's phones. Id. The phone intercepts informed officers Petitioner was also engaged in narcotics distribution and was Mr. Williams's supplier. Id. at 964. In one conversation, for example, Mr. Williams told Petitioner he had $29,000 to purchase drugs. Id. On June 10, 2011, officers observed Petitioner deliver half a kilogram of cocaine to Mr. Williams. Id.

On June 21, 2011, Judge Daniel J. Craig in the Superior Court of Richmond County issued a court order, pursuant to 18 U.S.C. § 3122 and O.C.G.A. § 16-11-64.1, authorizing investigators to receive real-time cell site information and GPS location tracking of Petitioner's cell phone. (CR 111-361, doc. no. 284-1.) Judge Craig found such information relevant to the criminal investigation that would constitute or lead to evidence of cocaine distribution. (Id. at 1, 3.) On June 25, 2011, Judge Craig issued another court order authorizing investigators to intercept Petitioner's phone calls. (Id., doc. no. 175, Ex. 5.)

On June 26, 2011, officers observed Petitioner arrive at Mr. Williams's stash house and leave with a white bag. Donaldson, 558 F. App'x at 964. Investigators followed Petitioner to 2911 Rolling Wood Drive in Augusta, Georgia. (CR 111-361, doc. no. 218, p.

28.)  Later that day, officers pinged Petitioner's phone and determined it was located at 180 Oakland Drive in North Augusta, South Carolina.  <u>Donaldson</u>, 558 F. App'x at 964.  Officers confirmed this was Petitioner's residence by observing him there and determining a vehicle at the address was registered to him.  <u>Id.</u>  In addition, officers pinged Petitioner's cell phone and located it at the same residence on June 27 and 28, 2011.  <u>Id.</u>

On June 27, 2011, officers intercepted a call between Petitioner and "Big" in which Petitioner arranged the purchase of four kilograms of cocaine.  <u>Id.</u> at 965.  The next day, on June 28, 2011, Richmond County officers contacted Detective Phillip Turner of the North Augusta Department of Public Safety, for assistance in obtaining a warrant to search Petitioner's residence.  <u>Id.</u>  Based on a summary of the investigation to date, Detective Turner drafted a search warrant application and affidavit which stated in part as follows:

> Through the use of multiple investigative means and techniques it has been established that within the past seventy-two hours, [Petitioner] was in possession of a quantity of cocaine and was in the process of acquiring more cocaine. Through further investigative techniques it has been discovered that [Petitioner] is living at 180 Oakland Drive, North Augusta, South Carolina. Reviewing the City of North Augusta water files it has been discovered that the account is in [Petitioner's] name. Upon conducting physical surveillance at the residence, a [vehicle] is parked at the residence and does come back [as registered] to [Petitioner]. Through using proven investigative tools and measures, it has been established that [Petitioner] has been present for extended periods of time at the residence in question. Upon my training and experience, I believe that probable cause exists that cocaine and items associated with the distribution or ingestion of cocaine are present on the property of 180 Oakland Drive, North Augusta, South Carolina.

<u>Id.</u>

That same day, June 28, 2011, Detective Turner met with the Honorable Roger Edmonds, Chief Magistrate Judge of Aiken County, South Carolina, to apply for the search

warrant. Id. at 965. In addition to the affidavit, Detective Turner provided sworn but unrecorded testimony regarding details of the investigation. (Id. at 966; CR 111-361, doc. no. 126, p. 7.) Judge Edmonds then signed the search warrant. Donaldson, 558 F. App'x at 966.

On June 29 and 30, 2011, phone intercepts discussed an upcoming meeting between Petitioner and Big on the morning of July 1, 2011. Id. On July 1, 2011, Petitioner told Big in a phone conversation he was on his way to the meeting and would purchase three kilograms of cocaine instead of four. Id. Officers followed Petitioner, uncertain where the meeting would occur. Id. Petitioner drove westbound on Interstate 20 for a significant distance, and officers believed he was driving to Atlanta. Id. Not willing to lose Petitioner in Atlanta, officers stopped Petitioner and a canine raised an alert during an open air sniff around Petitioner's vehicle. Officers searched Petitioner's vehicle and found a bag containing $82,025. Id. Officers took Petitioner to a nearby rest stop, and Petitioner admitted he was traveling to Atlanta to purchase three kilograms of cocaine with the money. Id. at 967.

At the same time as the traffic stop, officers executed the search warrant of Petitioner's residence and found 736.5 grams of cocaine, 124.9 grams of crack, 221.9 grams of marijuana, $57,000, a .40 caliber handgun, and a Rolex watch. Id.

**B.    Indictment**

On November 2, 2011, a grand jury in this district charged Petitioner with one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; three counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), (b)(1)(D); six counts of using a communication facility in causing or facilitating the commission of a felony, in

4

violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2; and one count of possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). (CR 111-361, doc. no. 1.) Petitioner pled not guilty on November 28, 2011. (Id., doc. no. 25.)

### C.     Motion to Suppress

On January 6, 2012, Petitioner filed a motion to suppress alleging (1) there was no probable cause for the traffic stop and car search on Interstate 20; (2) the search warrant affidavit for Petitioner's home did not establish probable cause and contained false information; and (3) the Leon good-faith exception to the exclusionary rule did not apply. (Id., doc. no. 90.) After an evidentiary hearing, United States Magistrate Judge W. Leon Barfield rejected all four arguments and recommended denial of the motion. (Id., doc. no. 126.) United States District Judge Dudley H. Bowen, Jr., adopted Judge Barfield's findings and overruled Petitioner's objections. (Id., doc. nos. 126, 149, 218.)

### D.     Bench Trial

At the bench trial that began on June 12, 2012, the Court heard testimony from Richmond County Sheriff's Office Investigator Ty Hester, North Augusta Department of Public Safety Investigator Phillip Turner, and former co-defendant Mr. Williams. (Id., doc. no. 217.) Investigator Hester explained how the investigation of Mr. Williams led to Petitioner, and he described the development of the case through intercepted phone calls, controlled drug purchases, the traffic stop on July 1, 2011, and the search of Petitioner's home on the same date. (Id. at 13, 15, 18, 25, 35, 47, 49, 52.)

Investigator Turner described his efforts to obtain the search warrant on June 28, 2011. (Id. at 86.) In so doing, Investigator Turner explained that he confirmed Petitioner's address

as 180 Oakland Drive by running the DMV license plates of vehicles found at the address to determine they were registered to Petitioner, and by searching city utility records and finding Petitioner listed as the resident. (Id. at 88-89.) Investigator Turner also testified regarding the large quantities of illegal drugs his team found at Petitioner's home during the search on July 1, 2011. (Id. at 91, 172.)

Mr. Williams testified that he first purchased cocaine from Petitioner in late 2009. (Id. at 140.) As Mr. Williams's cocaine sales flourished, he began purchasing kilograms of cocaine from Petitioner every one to two weeks and on multiple occasions he purchased $30,000 of cocaine from Petitioner. (Id. at 142-47, 158-60, 161-62.)

### E.    Verdict and Sentence

At the close of the evidence, defense counsel argued the Court erred in denying his motion to suppress because there was no nexus between Petitioner's home and any criminal activity. (Id., doc. no. 217, pp. 179-82.) Judge Bowen re-affirmed the ruling, finding there was "a plentitude of evidence" supporting the search warrant. (Id. at 184.) Judge Bowen found Petitioner guilty of one count of conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine hydrochloride, twenty-eight grams or more of cocaine base, and an amount of marijuana, in violation of 21 U.S.C. § 846; and one count of using a communication facility in causing or facilitating the commission of a felony, in violation of 21 U.S.C. § 843(b). (Id., doc. no. 207.)

On October 11, 2012, Judge Bowen sentenced Petitioner to 169 months imprisonment, five years supervised release, an $8,000.00 fine, and $100.00 special assessment. (Id.) On June 24, 2015, Judge Bowen reduced Petitioner's sentence from 169 months to 136 months in

accordance with a sentencing guideline amendment.  (<u>Id.</u>, doc. no. 254.)

**F.     Appeal**

Petitioner appealed his convictions to the Eleventh Circuit.  <u>Donaldson</u>, 558 F. App'x

at 962.  Petitioner argued the District Court erred in denying his motion to suppress because

Detective Turner's affidavit and oral testimony before Judge Edmonds did not establish

probable cause narcotics would be found at his residence.  <u>Id.</u> at 968.   Petitioner also argued

the District Court erred in failing to reduce his total offense level for acceptance of

responsibility pursuant to U.S.S.G. § 3E1.1.  <u>Id.</u> at 970.  Finding no error, the Eleventh Circuit

affirmed Petitioner's convictions and sentence.  <u>Id.</u> at 971.

**G.     28 U.S.C. § 2255 Motion**

Petitioner filed his § 2255 motion on June 1, 2015, asserting the following grounds:

Ground One:       Petitioner's counsel rendered ineffective assistance when
                  he failed to argue the "pinging" of his cellular phone
                  violated the Fourth Amendment.  Pinging constituted a
                  search and violated Petitioner's expectation of privacy in
                  his location and in his movements.

Ground Two:       Petitioner's counsel rendered ineffective assistance when
                  he failed to argue the search of his home was "federal in
                  nature" and was in violation of Fed. R. Crim. P. 41
                  because the oral testimony given in support of the search
                  warrant was not recorded or transcribed, in violation of
                  Fed R. Crim. P. 41(d)(2)(C).  Had the oral testimony been
                  recorded, it would have revealed the government violated
                  Petitioner's reasonable expectation of privacy, and
                  Detective Turner presented false information to the
                  magistrate.

Ground Three:     Petitioner's counsel rendered ineffective assistance when
                  he did not argue Petitioner was arrested and held without
                  probable cause and in violation of his Fourth Amendment

|                  | rights when he was detained before the search warrant of his home was executed. |
|------------------|---|
| Ground Four:     | Petitioner's counsel rendered ineffective assistance of counsel when he did not argue Petitioner's Fifth Amendment rights were violated because law enforcement never gave Petitioner <u>Miranda</u> warnings and coerced post-arrest statements. |

(<u>See generally</u> doc. no. 1.)  On July 20, 2016, Petitioner sought leave to add the claim counsel was ineffective for failing to challenge Judge Craig's Order authorizing cell phone GPS pinging as void *ab initio*.  (<u>Id.</u> at 22.)

## II.    DISCUSSION

### A.    There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  28 U.S.C. § 2255(b).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>Lynn v. United States</u>, 365 F.3d 1225, 1238-39 (11th Cir. 2004) ("Because the [evidence] submitted . . . amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing . . . .").  While ineffective assistance of counsel claims often

8

require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984). Because Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary, and Petitioner's § 2255 motion should be denied.

### B. Ineffective Assistance of Counsel Claims under <u>Strickland v. Washington</u>

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). Petitioner must show counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

9

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013) (disposing of ineffective assistance claim on prejudice prong alone).  Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

### C.   Ground One:   Petitioner Cannot Demonstrate Ineffective Assistance Because the Suppression Motion Counsel Purportedly Failed to File Would Not Have Resulted in Suppression of Any Evidence.

Petitioner argues counsel was ineffective for failing to argue the warrantless pinging of his cell phone and resulting revelation of his residence violated the Fourth Amendment. (Doc. no. 1, pp. 4, 21-29.)  Respondent concedes warrantless pinging raises serious Fourth Amendment concerns, but argues any suppression motion would have failed because the

exclusionary rule does not apply.  (Doc. no. 4, p. 28.)

Like others, the Court will assume without deciding the pinging of Petitioner's cell phone constituted a search necessitating a warrant supported by probable cause.  See United States v. Barajas, 710 F.3d 1102, 1108 (10th Cir. 2013) ("Like the district court, we will assume without deciding that pinging is a search . . ."); United States v. Abarca, No. 1:12CR29-MW/GRJ, 2014 WL 12641951, at *12 (N.D. Fla. Nov. 20, 2014) (same).  Doing so comports with the judicial preference for not deciding "questions of a constitutional nature unless absolutely necessary to a decision of the case."  Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 346 (1936) (Brandeis, J., concurring).

To establish deficient performance and prejudice in this context of claiming trial counsel failed to litigate a Fourth Amendment claim competently, Petitioner "must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).  Petitioner cannot make this showing because any suppression motion would have failed in light of the inevitable discovery and Leon good faith exceptions to the exclusionary rule.

> **1.  The Exclusionary Rule Does Not Apply Because the Cell Phone Pinging Merely Determined Petitioner's Residential Address, Which Investigators Were Actively Pursuing and Would Have Inevitably Discovered.**

Evidence obtained unlawfully is admissible if the government proves (1) a reasonable probability the evidence would have been discovered inevitably by lawful means, and (2) the "lawful means which made discovery inevitable were being actively pursued prior to the

occurrence of the illegal conduct." United States v. Johnson, 777 F.3d 1270, 1274 (11th Cir. 2015). Under the first prong, there exists a reasonable probability evidence will be discovered by lawful means if the evidence is discoverable by "normal police work" or "ordinary investigations." United States v. Brookins, 614 F.2d 1037, 1044-45 (5th Cir. 1980) (citing Gissendanner v. Wainwright, 482 F. 2d 1293 (5th Cir. 1973)).

Under the second prong, "active pursuit" does not require proof law enforcement actually planned the particular search or investigation that would lead to the evidence. Johnson, 777 F.3d at 1274-75. Instead the government must only show law enforcement "would have obtained the evidence by virtue of ordinary investigations of evidence or leads already in their possession." United States v. Norman, 638 F. App'x 934, 937 (11th Cir. 2016). The active pursuit requirement thus merely excludes "evidence that was not being sought in any fashion." United States v. Bishop, No. 15-15406, 2017 WL 1208403, at *8 (11th Cir. Apr. 3, 2017) (quoting Johnson, 777 F.3d at 1274-75).

Petitioner argues counsel was ineffective for failing to file a suppression motion arguing the cell phone GPS pinging was an illegal search under the Fourth Amendment. (Doc. no. 1, pp. 4, 21-29.) However, the only information obtained from the pinging was the location of Petitioner's residence at 180 Oakland Drive, and it is beyond peradventure investigators were actively pursuing, and would have inevitably discovered, the location of Petitioner's residence. As to the first prong, investigators had already obtained Petitioner's identity prior to the pinging by running the license plate number on his Mercedes. After the pinging, investigators easily confirmed Petitioner's residential address by (1) searching city water files that confirmed the account for the address was in Petitioner name; and (2)

determining that another vehicle parked at the residence was registered to Petitioner. Without hesitation, the Court finds there is a reasonable possibility investigators would have inevitably discovered Petitioner's residential address through the course of ordinary investigations and normal police work.

As to the second prong, the evidence leaves no doubt the government was actively pursuing Petitioner's residential address and would have easily obtained it without the cell phone pinging by virtue of ordinary investigations of evidence or leads already in their possession. Indeed, prior to the cell phone pinging on June 26, 2011, officers had already determined Petitioner's identity, observed him deliver cocaine to Mr. Williams, obtained court authorization to intercept Petitioner's phone calls, and trailed Petitioner from a meeting with Mr. Williams back to another residence at 2911 Rolling Wood Drive.

Application of the inevitable discovery doctrine in this context is hardly surprising and completely in line with precedent. Indeed, the purpose of the doctrine is to avoid the "high societal cost of allowing obviously guilty persons to go unpunished," by ensuring prosecutors are "generally not [] put in a worse position . . . than [they] would have been but for the constitutional violation." United States v. Terzado-Madruga, 897 F.2d 1099, 1114-15 (11th Cir. 1990).

Particularly helpful in this regard is United States v. Kroesser, 731 F.2d 1509, 1519 (11th Cir. 1984), wherein the defendant moved to suppress his statements revealing the location of his mobile home, arguing investigators violated his Miranda rights when they continued questioning him after he requested counsel. Id. The district court ruled discovery of the mobile home's location was inevitable based on the leads the investigators possessed.

Id.  On appeal, the Eleventh Circuit found police would have inevitably discovered the location of the mobile home because it was "a very large object," was unconcealed, was located at a campground, and would have been discovered through routine police investigation.  Id.

Here, the facts present a stronger case for application of the inevitable discovery doctrine than in Kroesser.  Unlike the mobile home in Kroesser, Petitioner's residence was stationary and immobile.  Furthermore, Petitioner made no effort to conceal his residence, as city water files confirmed the address as Petitioner's residence and automobiles parked at the residence were traceable to him through their license plates.  Accordingly, because investigators would have inevitably discovered Petitioner's residence, the evidence obtained as a result of the pinging would not have been subject to suppression, and Petitioner has failed to demonstrate ineffective assistance.

> **2.** **The Exclusionary Rule Does Not Apply Because Investigators Reasonably Relied on a Judicial Order Authorizing the GPS Pinging of Petitioner's Cell Phone.**

Although the investigating officers never sought a warrant based on a finding of probable cause, it is not as if they acted without judicial authority and approval.  On the contrary, on June 21, 2011, investigators obtained a court order from Richmond County Superior Court Judge Daniel J. Craig expressly authorizing investigators to obtain from Petitioner's cellular carrier "on-going real time cell site information and GPS position location including cell site location and sectors."  (CR 111-361, doc. no. 284-1.)  The court order cites as statutory authority the federal and state pen register/trap and trace statutes, i.e. 18 U.S.C. § 3122 and O.C.G.A. § 16-11-64.1, and bases the authorization on a factual finding

14

GPS location information was relevant to the ongoing criminal investigation and would constitute or lead to evidence of cocaine distribution.  (<u>Id.</u> at 1, 3.)  Because investigators reasonably relied on this court order when pinging Petitioner's cell phone to determine his location, any motion to suppress would have been denied based on the <u>Leon</u> good-faith exception to the exclusionary rule.

In <u>United States v. Leon</u>, the Supreme Court explained the Fourth Amendment does not prohibit the introduction of illegally seized evidence in all proceedings or against all defendants.  468 U.S. 897, 906 (1984).  Instead, "the wrong condemned by the Amendment is 'fully accomplished' by the unlawful search or seizure itself . . . [and] use of the fruits of a past unlawful search or seizure 'work[s] no new Fourth Amendment wrong.'"  <u>Id.</u> at 906.  In <u>Leon</u>, the Court recognized an "unbending application" of the exclusionary rule would impede the truth-finding functions of a judge or jury, generating disrespect for the law and administration of justice.  <u>Id.</u> at 907-08.  The exclusionary rule is "designed to deter police misconduct rather than to punish the errors of judges and magistrates."  <u>Id.</u> at 916.

"The Supreme Court's decision in <u>Leon</u> stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause."  <u>United States v. Robinson</u>, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (quotation and citation omitted).  Pursuant to <u>Leon</u>, suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  <u>Id.</u> at 1296.  Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness because a warrant issued by a judge

"normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Leon, 468 U.S. at 922 (quotation and citation omitted). Nevertheless, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922–23.

The Leon good-faith exception thus does not apply when: (1) the magistrate judge was misled by information the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the magistrate judge wholly abandoned his judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Robinson, 336 F.3d at 1296.

The Supreme Court has flexibly applied the good-faith exception to situations beyond law enforcement's reliance on a defective warrant issued by a neutral magistrate. See Davis v. United States, 564 U.S. 229, 241 (2011) (applying good-faith exception to searches conducted pursuant to reasonable reliance on binding judicial precedent); Herring v. United States, 555 U.S. 135 (2009) (applying good-faith exception to isolated negligence rather than systemic error or reckless disregard of constitutional requirements); Arizona v. Evans, 514 U.S. 1, 14-16 (1995) (applying good-faith exception to invalid arrest warrant when law enforcement relied on erroneous information in database maintained by judicial employees); see also United States v. Hardrick, No. CRIM.A. 10-202, 2012 WL 4883666, at *5 (E.D. La. Oct. 15, 2012) (collecting cases).

In keeping with the Supreme Court's broad application, numerous lower courts have applied <u>Leon</u>'s good-faith exception to law enforcement's reliance on a court order authorizing the collection of real-time or prospective GPS location data based on a factual finding of relevance to the investigation, rather than the more rigorous finding of probable cause. <u>See</u> <u>United States v. Caraballo</u>, 963 F. Supp. 2d 341, 366 (D. Vt. 2013), <u>aff'd</u>, 831 F.3d 95 (2d Cir. 2016) (applying good-faith exception to law enforcement's reliance on Stored Communications Act order based on a finding of less than probable cause for the gathering of real-time GPS data); <u>United States v. Takai</u>, 943 F. Supp. 2d 1315, 1324 (D. Utah 2013) (same); <u>United States v. Jones</u>, 908 F. Supp. 2d 203, 215 (D.D.C. 2012) (same); <u>Abarca</u>, 2014 WL 12641951 at *13 (same); <u>see also</u> <u>United States v. Skinner</u>, 690 F.3d 772, 787 (6th Cir. 2012) ("The good-faith exception enunciated in <u>Leon</u>, though not expressly applicable to the kinds of orders at issue in the present case, could be extended if the purposes of the exclusionary rule would not be served by its application.").

There is no indication Judge Craig was misled by false information or wholly abandoned his judicial role when he issued the court order. Nor is the court order so facially deficient that the executing officers could not have presumed it to be valid. On the contrary, Judge Craig's order determined the government could obtain real-time GPS tracking pursuant to 18 U.S.C. § 3122 and O.C.G.A. § 16-11-64.1, found the GPS tracking information was relevant to the ongoing criminal investigation against Petitioner, and found there was reason to believe the requested information would constitute or lead to evidence of cocaine distribution. (CR 111-361, doc. no. 284-1.)

While it appears likely that a court cannot authorize real-time GPS location monitoring absent a finding of probable cause, this Court cannot conclude Judge Craig's decision to do so constitutes an abandonment of his judicial role. Indeed, the law concerning this topic remains unclear and unsettled even today, six years after Judge Craig signed the authorizing court order. See Abarca, 2014 WL 12641951 at *13 (applying good-faith exception where officers reasonably relied on court order authorizing cell phone GPS tracking pursuant to 18 U.S.C. § 2703).

In sum, the officers were objectively entitled to rely on the court order authorizing pinging of Petitioner's phone. Suppression thus would not have served the purposes of the exclusionary rule and the good-faith exception applies.

**D. Ground Two: Counsel was Not Ineffective in Failing to Argue the Search Warrant Violated Federal Rule of Criminal Procedure 41 Because the Court Would Not Have Excluded Evidence Based On Such a Violation.**

As detailed in § I.A *supra*, an Aiken County, South Carolina magistrate judge issued a warrant for the search of Petitioner's residence on June 28, 2011, based on a written affidavit and unrecorded and sworn oral testimony by Detective Turner. (CR 111-361, doc. no. 126, p. 7.) Petitioner claims counsel was ineffective in failing to argue the search warrant was federal in nature and thus triggered the requirement in Fed. R. Crim. P. 41(d)(2)(C) that Detective Turner's sworn testimony be recorded. (Doc. no. 1, pp. 30-33.) Petitioner argues such a recording would have proved Detective Turner presented false testimony that would have led to suppression of all evidence seized as a result of the search warrant. (Id. at 6.) While conceding Rule 41 applies because the warrant was federal in execution due to participation by DEA, the government asserts Petitioner cannot demonstrate prejudice.

18

Under Federal Rule of Criminal Procedure 41(d)(2)(C), "[t]estimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit." Rule 41 governs searches that are "federal in execution." United States v. Brown, 569 F. App'x 759, 762 (11th Cir. 2014). A search is federal in execution if "a federal official had a hand in it." Id. If federal agents provide intelligence information to state officers, the warrant becomes federal in character and subject to Rule 41 of the Federal Rules of Criminal Procedure. United States v. Lehder-Rivas, 955 F.2d 1510, 1522 (11th Cir. 1992).

"Unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of an intentional and deliberate disregard of a provision in the Rule." United States v. Gerber, 994 F.2d 1556, 1560 (11th Cir. 1993). While Detective Turner's sworn testimony was not recorded, Petitioner has failed to show a constitutional violation, prejudice, or an intentional disregard of Rule 41.

First, there was no constitutional violation. As the Eleventh Circuit determined in Petitioner's appeal, "The Fourth Amendment . . . does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." Donaldson, 558 F. App'x at 967 n. 3. Instead, the Fourth Amendment only requires information provided to the issuing magistrate be supported by "oath or affirmation." Id. The Eleventh Circuit upheld Judge Edmond's probable cause finding based on Detective Turner's affidavit and sworn oral statement. Id. at 969.

19

Second, Petitioner cannot show prejudice. Petitioner vaguely contends a recording would have revealed false testimony by Detective Turner and his admission investigators violated the Fourth Amendment by pinging Petitioner's cell phone. Petitioner's bare assertions are wholly insufficient bases for federal habeas relief. See Duran v. Walker, 223 F. App'x 865, 875 (11th Cir. 2007) (concluding petitioner was not entitled to relief on conclusory and speculative claim where petitioner did not introduce any evidence to support bare allegations). More importantly, after an evidentiary hearing, this Court previously determined Detective Turner did not provide false information in his affidavit and the search warrant was otherwise supported by probable cause. (CR 111-361, doc. no. 126, pp. 20-25.)

Finally, there is no evidence Detective Turner or the Aiken County magistrate judge intentionally and deliberately disregarded Rule 41. While testifying under oath at the suppression hearing in this Court, Detective Turner explained that taking oral, unrecorded testimony in support of a search warrant "is not unusual in the South Carolina warrant application process." Donaldson, 558 Fed. Appx. at 966. There certainly is no contrary evidence suggesting Detective Turner or the county judge deliberately disregarded Rule 41. Indeed, it would have been reasonable for them to assume Rule 41 did not apply since Detective Turner was a state law enforcement officer seeking the warrant from a county judge. Accordingly, Petitioner has not shown the failure to record Detective Turner's sworn statements in support of probable cause required suppression of the evidence, and thus counsel was not ineffective in failing to raise this meritless argument.

**E.** **Ground Three: Counsel Was Not Ineffective In Failing to Argue Investigators Arrested Petitioner Without Probable Cause.**

Petitioner contends counsel was ineffective in failing to argue investigators violated his Fourth Amendment rights when they arrested him without probable cause. (Doc. no. 1, p. 36.) Petitioner argues his arrest cannot be justified based on the evidence generated during the search of his residence because his arrest occurred prior to the search. (Id. at 38-39.) Because officers had probable cause to arrest Petitioner independent of the evidence gathered from his residence, counsel was not ineffective for failing to raise this meritless argument.

"In Fourth Amendment terminology, an arrest is a seizure of the person . . . ." Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008) (quoting Skop v. City of Atlanta, 485 F. 3d 1130, 1137 (11th Cir. 2007)). The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred or is occurring. United States v. Goddard, 312 F.3d 1360, 1362–63 (11th Cir. 2002). Probable cause requires a greater certainty of criminal behavior than reasonable suspicion, but does not require the same standard of conclusiveness and probability necessary to support a conviction. United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003).

Probable cause to arrest exists when the totality of the facts and circumstances support "a reasonable belief that the suspect had committed or was committing a crime." United States v. Lindsey, 482 F.3d 1285, 1291 (11th Cir. 2007) (citation omitted). Furthermore, probable cause is decided by courts on an objective basis without regard to the subjective beliefs of law enforcement officers. Whren v. United States, 517 U.S. 806, 813–14 (1996)

("Subjective intentions play no role in ordinary, probable-cause, Fourth Amendment analysis."); Ornelas v. United States, 517 U.S. 690, 696 (1996).

The totality of the circumstances overwhelmingly supports an objective finding of probable cause to believe Petitioner had committed felony drug crimes and was in the process of committing additional felony drug crimes. Officers observed Petitioner sell cocaine to Mr. Williams on numerous occasions, and also intercepted numerous phone calls in which Petitioner agreed to purchase cocaine from Big. Officers were aware Petitioner intended to purchase three kilograms of cocaine when he drove to meet Big at a warehouse on July 1. Id. After a canine provided officers with probable cause to search Petitioner's vehicle, officers discovered $82,025 in cash. Id. Petitioner's argument is thus meritless, and counsel was not ineffective.

### F. Ground Four: Petitioner's Fifth Amendment Rights Were Not Violated.

Petitioner argues counsel rendered ineffective assistance by failing to argue law enforcement violated Petitioner's Fifth Amendment rights by not providing Petitioner Miranda warnings and by coercing incriminating statements from him after his arrest on July 1, 2011. (Doc. no. 1, pp. 8, 41.) The government correctly argues this claim is meritless because they did not introduce Petitioner's incriminating statements at his bench trial. (Doc. no. 4, p. 38.) (See generally CR 111-361, doc. no. 217.) Accordingly, counsel was not ineffective for failing to raise the issue, and Petitioner cannot establish prejudice.

### G. Petitioner's Motion to Amend

Petitioner moves to amend his motion, asserting counsel was ineffective for failing to argue Judge Craig's Order authorizing cell site and GPS position information was void *ab*

*initio*.  (Doc. no. 22, pp. 1-2.)    Petitioner contends Judge Craig violated Georgia law by allowing investigators to obtain information from outside the territorial borders of his jurisdiction, analogizing ping data to wire interceptions.  (Id. at 2.)  As support, Petitioner cites Luangkhot v. State, 736 S.E.2d 397 (Ga. 2013), which held the Superior Court of Gwinnett County, Georgia lacked jurisdiction to issue wiretap orders where the listening posts and phones were located outside of Gwinnett County.  The government argues Judge Craig's order was signed and executed within Richmond County, and the order does not fail for jurisdictional reasons.  (Doc. no. 23.)

The Federal Rules of Civil Procedure apply to proceedings for habeas corpus "to the extent that the practice in those proceedings:  (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."  Fed. R. Civ. P. 81(a)(4).  Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions.  See Mayle v. Felix, 545 U.S. 644, 654 (2005); Pruitt v. United States, 274 F.3d 1315, 1317-19 (11th Cir. 2001) (*per curiam*).  Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Federal Rule of Civil Procedure 15(a)(1) provides that:

A party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is

23

> required, 21 days after service of a responsive pleading or 21 days after service
> of a motion under Rule 12(b), (e), or (f), whichever is earlier.

If a party is not entitled to amend as a matter right under Rule 15(a)(1), then "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). As a general rule, leave to amend under Rule 15(a) is given freely. Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 538 (2010). That said, leave to amend is not guaranteed, and the decision of whether to grant a motion to amend is within the sound discretion of the trial court. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A July 1981). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (*per curiam*).

An amendment is futile when the pleading it seeks to amend would still be subject to dismissal if the amendment were permitted; similarly, a motion to amend which seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief. See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (*per curiam*) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'" (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (*per curiam*))). Here, because Petitioner's motion to amend was filed more than twenty-one days after the government's response to his original § 2255 motion, he cannot amend as a matter of right under Rule 15(a)(1). The Court also finds that Petitioner may not amend under Rule 15(a)(2) because his claim is futile.

First, although Petitioner relies on Luangkhot, 736 S.E.2d at 397, analogizing the GPS pinging of his cell phone to a wiretap interception, he has not provided any authority for why the pinging should be construed as such. Wiretap interceptions are governed by the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. §§ 2510-2521 (1988). However, Judge Craig issued the order authorizing cell site and GPS position information pursuant to O.C.G.A. § 16-11-64(c) and 18 U.S.C. § 3122, which govern pen registers and trap and trace devices. (CR 111-361, doc. no. 284-1.) Title III only concerns orders "authorizing or approving the interception of a wire or oral communication," does not govern the authorization for the use of pen registers or trap and trace devices, and Title III's definition of "intercept" specifically excludes pen registers. United States v. N.Y. Tel. Co., 434 U.S. 159, 160 (1977). Furthermore, 18 U.S.C. § 3122 provides no indication of a territorial limitation applicable to orders issued under the statute. Thus, Petitioner's reliance on Luangkhot is misplaced, and the Court should not allow Petitioner to add this futile claim.

Even if Petitioner were correct that Judge Craig lacked the jurisdiction to authorize cell phone pinging when the cell phone was located outside of Richmond County, Petitioner's claim is still without merit for the reasons discussed in §§ II.C.1-2, *supra*. Indeed, this new argument still suffers from the fatal defect that the exclusionary rule does not apply where, as here, investigators would have inevitably discovered Petitioner's residence without the pinging information, and they reasonably relied on Judge Craig's order authorizing the pinging outside of Richmond County. For these reasons, Petitioner's new ground for relief is futile and Petitioner's motion to amend (doc. nos. 22-1, 22-2) should be **DENIED**. See Coventry First, LLC, 605 F.3d at 870.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Petitioner's motion to amend be **DENIED** (doc. nos. 22-1, 22-2), the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMEND